UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEMPSEY ADDISON,

        Plaintiff,

Civil Action No. 12-12793

Honorable Denise Page Hood

v.

CITY OF DETROIT-DEPARTMENT OF
HUMAN SERVICES, UNITED STATES
DEPARTMENT OF HEALTH AND HUMAN
SERVICES and COMMUNITY DEVELOPMENT
INSTITUTE,

        Defendants.

_____/

## ORDER REGARDING VARIOUS MOTIONS
## AND
## ORDER DISMISSING ACTION

**I.     BACKGROUND**

On June 26, 2012, Defendant United States Department of Health and Human Services ("HHS") removed this matter from the Wayne County Circuit Court, State of Michigan under 28 U.S.C. §§ 1442, 1446. Plaintiff Dempsey Addison ("Addison") filed a Complaint against Defendants City of Detroit-Department of Human Services ("Detroit-DHS"), HHS, and Community Development Institute ("CDI") alleging two breach of contract claims on June 21, 2012. Upon removal to this Court, Addison filed a Motion for Temporary Restraining Order and/or Preliminary Injunction on June 27, 2012 and an Emergency Motion to Remand on June 28, 2012, which were denied in an Order dated June 29, 2012.

Addison is an employee of the Detroit-DHS, who is paid through a grant from Head Start to the Detroit-DHS. (Comp., ¶ 1) Addison is the president of the Association of Professional and

Technical Employees ("APTE"), a union representing employees of the City of Detroit. (Comp., ¶ 2) Nine other APTE employees have positions funded by a grant from Head Start. (Comp., ¶ 2) Detroit-DHS acts as grantee for purposes of administering the Head Start grant from HHS. (Comp., ¶ 3) HHS is a department of the United States government. (Comp., ¶ 4) CDI is a foreign corporation doing business in the City of Detroit. (Comp., ¶ 5)

Detroit-DHS received a grant from HHS to administer the Head Start program for the City of Detroit for the period between November 1, 2011 through October 31, 2012. (Comp., ¶ 8) The governing body for the Head Start program is entitled the Community Service Commission, and is a tri-partite board composed of representatives from the community including parents and former Head Start parents, business and mayoral appointees and City Council members. (Comp., ¶ 11) A Policy Counsel is associated with Detroit-DHS which is composed of at least 51% of parents who have children currently enrolled in Head Start and the others are community representatives selected by Detroit-DHS. (Comp., ¶ 12)

On March 12, 2012, City of Detroit Mayor Dave Bing sent a letter to Kay Willmoth, Regional Program Manager for the U.S. Office of Head Start, stating that the City of Detroit did not plan on submitting a refunding application for the program period November 1, 2012 to October 31, 2013, but that the City of Detroit would continue to administer the Head Start program and maintain staff through the current program period ending October 31, 2012. (Comp., ¶ 13) The Head Start regional office suggested to the Detroit-DHS that it should amend the grant to terminate at the beginning of July 2012. Eunice Hayes, Chairperson of the Community Service Commission, noted that the City of Detroit agreed with the regional office and that the Detroit-DHS would relinquish responsibility for the administration and oversight effective June 30, 2012. (Comp., ¶ 14)

However, neither the Detroit-DHS governing board for Head Start nor the Policy Council voted and approved this unilateral decision to relinquish the Head Start grant, which violated the Head Start regulations. (Comp., ¶ 15) A March 28, 2012 letter from Kay Willmoth and Eric P. Staples, acknowledged HHS's acceptance of the City of Detroit's relinquishment of the Head Start grant effective June 30, 2012, indicating that CDI would serve as the interim grantee. (Comp., ¶ 16) HHS issued a Notice of Award on April 27, 2012, noting that the Head Start grant for Detroit-DHS was being terminated effective June 30, 2012 and that the remaining funds were being transferred to CDI. (Comp., ¶ 17)

On March 30, 2012, Addison received a letter from Patrick A. Aquart, City of Detroit Human Resources Director, indicating that the workers whose jobs were funded by the Head Start grant would be laid off no later than June 15, 2012. (Comp., ¶ 18) Addison has not been offered a position with CDI and that Addison and the other APTE employees were told they would not be considered for positions with CDI. (Comp., ¶¶ 19-20) Addison is the only named-plaintiff in the Complaint.

This matter is before the Court on Motions to Dismiss filed by HHS, CDI and the City of Detroit. Responses and replies have been filed. Hearings were held on the matter. For the reasons set forth below, the Motions to Dismiss are granted and this action is dismissed.

## II. ANALYSIS

### A. Motions to Dismiss

#### 1. Standard of Review

Rule 12(b)(1) of the Rules of Civil Procedure provides for dismissal for lack of jurisdiction over the subject matter. Fed. R. Civ. P. 12(b)(1). Motions under Rule 12(b)(1) fall into two general

categories: facial attacks and factual attacks. S*ee, RMI Titanium Co. v. Westinghouse Elec. Corp.,* 78 F.3d 1125, 1134 (6th Cir. 1996). A facial attack challenges the pleading itself. In considering this type of attack, the court must take all material allegations in the complaint as true, and construe them in light most favorable to the non-moving party. *Id.* Where subject matter jurisdiction is factually attacked, the plaintiff bears the burden of proving jurisdiction to survive the motion, and "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* In a factual attack of subject matter jurisdiction, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.*

Rule 12(b)(6) provides for a motion to dismiss based on failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.] Factual allegations must be enough to raise a right to relief above the speculative level...." *Id.* at 555 (internal citations omitted). Although not outright overruling the "notice pleading" requirement under Rule 8(a)(2) entirely, *Twombly* concluded that the "no set of facts" standard "is best forgotten as an incomplete negative gloss on an accepted pleading standard." *Id.* at 563. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer

4

possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557. Such allegations are not to be discounted because they are "unrealistic or nonsensical," but rather because they do nothing more than state a legal conclusion–even if that conclusion is cast in the form of a factual allegation. *Ashcroft v. Iqbal,* 556 U.S. 662, 681 (2009). In sum, for a complaint to survive a motion to dismiss, the non-conclusory "factual content" and the reasonable inferences from that content, must be "plausibly suggestive" of a claim entitling a plaintiff to relief. *Id.* Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not shown that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). The court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *Amini v. Oberlin College,* 259 F.3d 493, 502 (6th Cir. 2001).

  **B.**  **Motions to Dismiss**

    **1.**  **Contract Dispute Act**

The United States, CDI and the City of Detroit assert that this Court lacks subject matter jurisdiction over the breach of contract claims under the Contract Dispute Act ("CDA"), 41 U.S.C. § 601 *et seq.* Addison responds that she is not a contractor covered under the CDA, but a third party beneficiary to the contracts between HHS and the Detroit-HHS, citing *RMI Titanium, supra*.

The United States waived its right to assert sovereign immunity under the CDA against contractual claims in return for the contractor's waiver of its right to an Article III trial. *Bank of Am. Nat'l Trust and Sav. Ass'n v. United States,* 23 F.3d 380, 387 (Fed. Cir. 1994). The CDA is intended

5

to keep government contract disputes out of district courts, to limit waiver of sovereign immunity and to submit government contract issues to forums that have specialized knowledge and experience. *United States v. Kasler Elec. Co., Inc.,* 123 F.3d 341, 346 (6th Cir. 1997). The Court of Federal Claims has exclusive jurisdiction for judicial review over any dispute relating to a contract for goods and services between an executive agency of the United States government and an independent contractor. 41 U.S.C. § 609(a)(1). Based on the express language of the CDA, contract disputes between the United States and its contractors are governed by the CDA and this Court has no authority to review such claims.

      Addison asserts that she is a third-party beneficiary to the contracts, therefore her claim is not governed by the CDA. The Sixth Circuit case cited by Addison to support her argument is inapposite. The Sixth Circuit held in *RMI Titanium* that a party's status as a subcontractor does not defeat CDA preemption. In *RMI Titanium*, the contract was between the postal service and a general contractor, who in turn hired subcontractors to build a post office building. The subcontractor made the same arguments in that case as Addison does in this case–that it did not have a direct contract with the postal service, therefore the CDA did not preempt the district court's jurisdiction. In *RMI Titanium,* the Sixth Circuit held that the subcontractor's claims against the prime management contractor were essentially contractual in nature and, therefore had to be resolved under the CDA. *RMI Titanium,* 78 F.3d at 1136. A plaintiff may not avoid the jurisdictional bar of the CDA by merely alleging violations of regulatory or statutory provisions. *Id.* Rather, it is the determination of whether the action is essentially a contract dispute that controls. *Id.*

      Here, Addison alleges in her Complaint that she is a third-party beneficiary under the contract between the HHS and Detroit-HHS and that HHS violated the contract and the regulations.

By her own statement, the claims at issue are contractual in nature. Accordingly, the CDA is applicable and this Court lacks jurisdiction to review the contract dispute alleged by Addison against HHS, CDI and Detroit-HHS.

### 2. Private Cause of Action under the Head Start Regulations

The United States, CDI and the City of Detroit assert that there is no private cause of action under the Head Start Regulations. Addison argues that she does have the right to bring suit under the Head Start Regulations.

Courts have ruled that there is no private cause of action for an alleged violation of the Head Start Regulations. *See Holocheck v. Luzerne County Head Start,* 385 F. Supp. 2d 491, 501 (M.D. Pa. 2005). Addison has cited the same case cited by the United States, *Holocheck.* However, *Holocheck* does not support Addison's argument, but instead supports the Defendants' arguments. The court in *Holocheck* found no private right of action under the Head Start Act or its Regulations. *Id.* at 501-02. A private citizen cannot sue for a violation of the Head Start Regulations because there is no private cause of action by which a plaintiff may bring these claims. *Johnson v. Quin Rivers Agency for Community Action, Inc.,* 128 F.Supp. 2d 332, 336-37 (E.D. Va. 2001)(dismissing a former employees' claims alleging violations of the Head Start Regulations). Addison cannot sue for alleged violations of the Head Start Regulations.

### 3. Lack of Standing

Even if there exists a private cause of action under the Head Start Regulations, the United States, CDI and the City of Detroit argue that Addison lacks standing to challenge a violation of the Head Start Regulations because she is an incidental beneficiary of the agreement between HHS and Detroit-HHS. Addison responds that as a third-party beneficiary, she has standing to challenge the

violations of the Head Start Regulations.

In Michigan, an incidental beneficiary has no rights under a contract. *Koenic v. City of South Haven,* 460 Mich. 667 (1999). Only intended third-party beneficiaries, not incidental beneficiaries, may enforce a contract. M.C.L.A. § 600.1405; *Kammer Asphalt Paving Co., Inc. v. East China Twp. Schools,* 443 Mich. 176 (1992). A third party cannot maintain a breach of contract simply because she would have received a benefit from its performance or would be injured by its breach. *Id.* Third-party beneficiary status requires an express promise to act to the benefit of the third party and where no such promise exists, that third party cannot maintain an action for breach of contract. *Kisiel v. Holz,* 272 Mich. App. 168 (2006).

A review of the grant agreement attached to the Complaint shows that there is no express promise in the agreement identifying Addison or any employees of the Detroit-HHS Head Start Programs as beneficiaries or any other status. The grant agreement identifies the children of the Head Start programs and certain neighborhoods in Detroit. As none of the Head Start employees are mentioned in the grant agreement between the HHS and Detroit-HHS. Addison has failed to state a claim under a third-party beneficiary theory that Addison was to benefit under the grant.

### 4. Continued Employment

In response to CDI's Motion to Dismiss, Addison argues that a federal regulation, 45 CFR 1302.11, mandates CDI to continue to employ her and her colleagues under the contract between CDI and Detroit-HHS. Addison's Complaint alleges, "45 CFR 1302.11 provides that the application to replace a grantee shall include a provision for continued employment by the applicant of the qualified personnel of the existing program." (Comp., ¶ 35) CDI replies that the "contract" between CDI and Detroit-HHS, which is really a "grant," does not provide that CDI must continue to employ

8

Addison and her colleagues. CDI further argues that it is not a "replacement" grantee, but an "interim" grantee.

The regulation cited by Addison, 45 CFR § 1302.11, entitled, "Selection among applicants to replace grantee," states in relevant part:

> The bases for making a selection among applicants which submit approvable applications to replace a grantee, in addition to the basis in § 1302.10 of this part, shall be:
>
> \* \* \*
>
> (c) The extent to which provision is made for continued employment by the applicant of the qualified personnel of the existing program.

45 CFR § 1302.11.

Even if Addison had a private cause of action under the Head Start program and had standing to bring a third party incidental beneficiary claim, a reading of this regulation does not show that the replacement grantee ***must*** continue the employment of personnel under the previous grant. This regulation sets forth one of the criteria on which HHS bases its decision when replacing a grantee to operate the Head Start program. Subsection (c) notes that HHS shall base its decision on the "*extent* to which provision is made for continued employment by the applicant of the qualified personnel of the existing program." 45 CFR § 1302.11 (italics added). The regulation does not "mandate" that the replacement grantee is obligated or required to continue the employment of the existing employees from the previous grantee. This regulation is one of other criteria on which HHS may base its decision to replace a Head Start program grantee, including those found in 45 CFR § 1302.10 which provides: cost effectiveness of the proposed program; qualifications and experience of the applicant and *its* staff in planning, organizing and providing services; the quality of the proposed program; the proposed program design as it relates to community needs; and, the need for

9

Head Start services in the community. 45 CFR § 1302.10. Because the regulation cited by Addison does not require that CDI continue to employ those employed by the prior grantee, here Detroit-HHS, Addison's claim under this regulation, even if applicable, must be dismissed for failure to state a claim upon which relief may be granted.

### 5. Collective Bargaining Agreement

CDI also argues that Addison's remedy, as a union member, is subject to the collective bargaining agreement between the City of Detroit and Addison's union. In response, Addison states that her claim is not to enforce a termination agreement with the City of Detroit, but to enforce the contract between HHS and Detroit-HHS, which was taken over by CDI. Addison is asserting that CDI must continue employing Addison and her co-workers under the Head Start Grant. For the same reasons set forth above, Addison does not have a claim against CDI based on a breach of contract claim or a third-party beneficiary claim.

## III. CONCLUSION

For the reasons set forth above,

IT IS FURTHER ORDERED that the United States Department of Health and Human Services' Motion to Dismiss **(No. 4)** is GRANTED.

IT IS FURTHER ORDERED that the Community Development Institute's Motion to Dismiss **(No. 15)** is GRANTED.

IT IS FURTHER ORDERED that the City of Detroit-Department of Human Services' Motion to Dismiss **(No. 28)** is GRANTED.

IT IS FURTHER ORDERED that the Motion for Preliminary Injunction **(No. 5)** is DENIED as MOOT given the dismissal of the case.

IT IS FURTHER ORDERED that this action is DISMISSED with prejudice.


        S/Denise Page Hood
        Denise Page Hood
        United States District Judge

Dated: March 27, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 27, 2013, by electronic and/or ordinary mail.

        S/LaShawn R. Saulsberry
        Case Manager